## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **RYAN LYNN, and** | )( | **Civil Action No.: 3:19-cv-44** |
| **WINDSOR EMS, LLC,** | )( | |
| | )( | |
| *Plaintiffs,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **THE CITY OF TEXAS CITY and** | )( | |
| **WENDELL WYLIE,** *Individually* | )( | |
| | )( | |
| *Defendants.* | )( | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE GEORGE C. HANKS:**

**NOW COMES PLAINTIFFS WINDSOR EMS and RYAN LYNN** and files this

Original Complaint against defendants, the City of Texas City, Texas and Wendell Wiley,

individually, and for cause of action would respectfully show unto the Court and jury the

following:

### I.    INTRODUCTION

1.   This case is about abuse of power by government officials, ratified by Texas City

Commissioners, whereby the City's EMS director used his office, municipal policy, and

state reporting mechanisms to oppress, harass, and intimidate a small business owner who

refused to cooperate in the official's illegal commercial bribery scheme. This action alleges

civil rights violations under Title 42 U.S.C. Section 1983 ("Section 1983") for violation of

Plaintiffs' federal equal protection, due process, procedural due process, freedom to

contract, and property rights. In retaliation for refusing Captain Wendell Wiley's request

1

to put him on Plaintiffs' payroll, Wiley revoked Plaintiffs' permit to operate his private ambulance service inside Texas City limits, causing monetary losses of more than $2 million dollars and incalculable damage to Plaintiffs' long-earned business reputation. Plaintiffs' civil rights claims, alleged herein, sound in unbridled discretion and selective enforcement. Under a municipal scheme that encouraged corruption and arbitrary enforcement, the defendants cherry-picked which sections of its emergency management code to enforce. In violation of the City's own ordinance, defendants revoked Plaintiffs' permit with no notice and no opportunity for administrative appeal. Meanwhile, the defendants awarded permits to other private ambulance companies that failed to comply with the City's own ordinance.

2.   This suit also alleges anti-competitive practices under federal antitrust laws. The City exceeded its state-derived authority when it established, with no rational basis, an arbitrary limit on the number of private ambulance companies allowed to serve its populace. Wiley oversees the administration of a transfer service rotation master list, arbitrarily limited to four slots for private ambulance companies to receive City referrals for emergency medical services and patient transport. Once the list is full, no additional permits are issued. By allowing companies that do not comply with the City ordinance to occupy the list, the City endangers public health by arbitrarily limiting the number of qualified responders, and illegally restrains competition against qualified providers. Just as the plaintiff suffers particularized damages as a direct result of this illegal restraint, the public suffers longer wait times and inadequate emergency medical service.

3.   Plaintiffs also brings state law causes of action for tortious interference with private

contracts both inside and outside Texas City.

4.   Plaintiffs seeks injunctive relief to stop the irreparable injury that has been ongoing since his permit was revoked, and seeks declaratory relief that the Texas City permitting scheme constitutes an illegal restraint on trade. Plaintiffs' also seeks monetary damages, including actual and treble damages from lost business, and the cost of the suit, including attorneys' fees for defendants' violations of federal antitrust laws and violations of Plaintiffs' civil rights.

## II.   PARTIES

5.   Windsor EMS, LLC, is a Texas Limited Liability Company with its principal place of business in Harris County, Texas.

6.   Ryan Lynn is the owner and operator of Windsor EMS, a Texas Limited Liability Company with its principal place of business in Harris County, Texas. At all relevant times, Windsor EMS entered the Texas City market and showed that it possessed the capacity to finance its business operations and provide the necessary facilities and engage in necessary contracts to be a successful ambulance service provider. Plaintiffs took all available affirmative steps to enter and stay in the Texas City market and possessed the background and skill necessary to successfully own and operate an ambulance business.

7.   Defendant, the City of Texas City is a Texas home rule municipal corporation and may be served with process by serving the City Secretary, James Hathorn at 1801 9th Ave. N. Texas City, Texas 77590.

8.   Defendant, Captain Wendell Wiley is the EMS administrator for Texas City. At all times material herein, Wiley acted pursuant to his authority as Texas City EMS

Administrator and is responsible for carrying out the decisions, policies, and ordinances made by City Commissioners. This Defendant may be served with process at 1801 9th Avenue North, Texas City, Texas 77592 or wherever he is found.

## III.    JURISDICTION AND VENUE

9.    This court has federal question jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction for federal antitrust claims under 15 U.S.C. §§1, 15(a). This court has jurisdiction under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to issue declaratory relief, where, as here, it otherwise has jurisdiction over a controversy.

10.    This court has original jurisdiction under 28 U.S.C. §1343(a)(3) because certain causes of action herein are brought under 42 U.S. C. §1983 to redress the deprivation, under color of State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

11.    This Court is entitled to exercise supplemental jurisdiction over state law claims herein pursuant to the provisions of 28 U.S.C. §1367 (a) because all such claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

12.    Venue is appropriate in this Court, as the defendant resides in this state and is found in this judicial district, and the events giving rise to the claims occurred in this judicial district. See 28 U.S.C. § 1391(b).

## IV.    FACTUAL BACKGROUND

13. At all relevant times Ryan Lynn was the operator of Windsor EMS, a private ambulance service providing medical transportation and emergency services throughout Galveston, Harris, Chambers and Brazoria Counties. For the last 14 years, the company has provided quality medical transportation and services in Texas City ("the City") and throughout the region. Prior to 2012, the City's emergency management system was loosely enforced and permits were not required to operate private ambulance services. In 2012 a new ordinance was passed and amended in 2014, which established permitting criteria for private EMS companies to operate inside city limit and, as amended, restricted the number of companies with permits to four. At that time, only four companies, Including Windsor EMS held Texas City permits. The City notified permittees of the new ordinance and allowed 30 days to comply with the new mandates. To achieve compliance, Windsor EMS opened a storefront inside Texas City limits and thereafter continued providing services to the public as it had for years.

14. In 2015, the City hired Captain Wendell Wiley ("Wiley") as its EMS Administrator. A few months later Wiley approached Plaintiffs about employment at Windsor EMS. Though licensed as a paramedic, Wiley specifically requested an unspecified part time position that was "not on an ambulance." Concerned about an apparent conflict of interest arising out of Wiley's regulatory position, Plaintiffs declined Wiley's proposition. In October of 2016, Wiley again contacted Windsor EMS seeking employment. Just two and a half months later, revoked Windsor EMS's permit to operate inside the City limits.

15. Though rarely enforced prior to 2017, the City's published deadline for accepting permit applications is January 31st of each year. Sometime after Plaintiffs submitted the

Windsor EMS application on February 1, 2017, they were told the company had vacated its position on the City master list. In a phone call with Plaintiffs' on February 3, 2017, Wiley refused to disclose the names of companies that he included on the city's rotation list. In fact, two of the companies on the List failed to comply with the City's own ordinance. Meanwhile, Windsor EMS was denied a permit, despite fully complying the new municipal mandates. Plaintiffs' filed a timely renewal in January of 2018 and was again denied, despite the lack compliance by other ambulance companies, which were again granted permits to the exclusion of Windsor EMS.

16. During the intervening months, Plaintiffs' and other Windsor EMS employees endured systematic harassment by Wiley and other city officials acting at his behest. Wiley's intimidation tactics involved trespass on company property, threatening employees with arrest, false imprisonment, interference with patients' treatment, following Windsor ambulances even outside Texas City limits, issuing citations, filing erroneous probable cause affidavits to secure arrest warrants, interfering with Plaintiffs' private business contracts with healthcare facilities both inside and outside Texas City limits, and abusing the state reporting mechanism in an effort to jeopardize Plaintiffs' state license to operate a private ambulance service. Lynn also faces five outstanding warrants in Texas City, based on faulty affidavits filed by the Texas City Fire Marshal over incidents where neither Lynn nor the fire marshal were present.

17. To date, this bullying campaign has resulted in the loss of more than $2 million per year in revenues from both inside and outside Texas City and fines totaling more than $7,000 plus attorneys' fees. Plaintiffs also faces the revocation of his state license, with a

hearing before Department of State Health Services triggered by Wiley's meritless and vexatious complaints. The impending loss or suspension would of course prove fatal to Plaintiffs' otherwise successful business.

18.  At one point in the ordeal, Plaintiffs' received another curious proposition from Wiley. In a recorded phone call on January 9, 2018, Wiley requested a meeting with Lynn outside the presence of his attorneys, in order to come to "a resolution." When Lynn asked if this meant Texas City would drop the warrants against him, Wiley said that was a possibility. Lynn expressed his preference to have the parties' attorneys involved in any discussions, and pressed Wiley about his intentions for the meeting. Wiley said he hoped that they could "put this all to rest and be done with it," and that "we can all walk our separate ways and everybody's happy." Lynn followed up with his attorneys, and the meeting never occurred.

Texas City's Illegal Permitting Scheme

19.  Texas City derives its authority over Windsor EMS from Chapter 773 of the Texas Health and Safety Code, which expressly delegates the power to issue or deny permits for private ambulance services to operate within city limits. The state statute explicitly authorizes municipalities to establish standards for emergency medical providers that are stricter than the minimum standards prescribed by the legislature. Tex. Health & Safety Code § 773.051. However, the statute stipulates that limits on services available to the public should be pursuant to a city's determination that the addition of another licensed emergency medical services provider would "interfere with or adversely affect the provision of emergency medical services. . .operating in the municipality or county." Tex.

Health & Safety Code § 773.0573(b)(1).

20. In 2012, the City Board of Commissioners passed Ordinance 14-11 ("the Ordinance") which established requirements permitting private ambulance companies to transport medical patients and provide other emergency health services inside the City limits. For imminently life-threatening emergencies (for example patients whose conditions require response times shorter than 15 minutes), the City's dispatcher refers calls to the Texas City Fire Department. For all other emergent and non-emergent medical calls, the city's dispatcher employs a transfer service rotation list ("the List") of private ambulance companies that hold valid permits in Texas City. With no public health justification enshrined in the text, nor published in the deliberative record, the Ordinance provides that "The transfer ambulance rotation list shall be limited to four slots and the total number of ambulance service permits issued by the city at any one time shall therefore be limited to four." Texas City Code of Ordinances § 35.06(D). This, along with other amendments were passed on May 5, 2014.

21. At the time of the 2014 amendments, only four private ambulance companies held active permits to operate in Texas City. Windsor EMS was one of them. The companies were given 30 days' notice to comply with the amended regulations, including a new mandate that required maintenance of a store front in Texas City. That portion of the ordinance is codified at Texas City Code of Ordinances § 35.04(C)(2). Within the time allotted, Windsor EMS opened the mandatory store front and was then—and at all times thereafter—fully compliant with the Ordinance.

22. Plaintiffs continued serving Texas City patients without incident until after the City

hired a new EMS Director, Captain Wendell Wylie in 2015. After a few months on the job, Wiley approached Windsor EMS seeking employment. In October the following year of 2016, Wylie again attempted to obtain paid work from Windsor. Still suspicious that Wiley sought payment in consideration for favored status on the List, Plaintiffs' refused to put Wylie on the payroll. Fewer than three months later, Plaintiffs' regulatory troubled with Texas City began.

23. On February 1st, 2017, less than 24 hours after the published deadline, Ryan Plaintiffs' filed a renewal application for the Windsor EMS Texas City permit. Though deadlines had not been previously enforced, Wiley eventually told Plaintiffs their application was late and Windsor EMS had forfeited its slot on the List. Despite having narrowly missed the filing deadline, Windsor EMS company was the only fully compliant ambulance provider to apply for the final permit. When Plaintiffs requested an opportunity to reapply for the now-vacated slot, Wiley told him the slot had already been filled and that no additional permits would be issued. Surprised that a fifth company was even qualified to hold a permit under the City's new requirements, Plaintiffs asked who had taken his position on the list. Wiley refused to disclose the names of any other companies on the List, but erroneously assured Plaintiffs that all the companies on the List were fully compliant. In fact, two companies on the 2017 and 2018 Lists failed to comply with the Ordinance by not maintaining a store front in Texas City, as required by the Ordinance. Suspecting that the non-compliant companies were compensating Wiley, as Plaintiffs had refused to do, Plaintiffs called Wiley to inquire about about his permit status. In a recorded(?) phone call on February 17, 2017 Wiley told Lynn, "They're gonna get extra time [to comply with the

9

ordinance] and you're not." Lynn told Wiley that the administrators' discretionary authority did not justify permitting noncompliant companies, while rejecting qualified ones, to the detriment of public health. Wylie assured him that it did.

24.  On multiple occasions, Plaintiffs sought relief from the City Commissioners from Wiley's arbitrary and capricious enforcement of the Ordinance, but was denied any hearing or venue for administrative appeal. On February 15, 2017 Lynn spoke during public comment period at a City Commissioners meeting about his objections to the Ordinance's arbitrary enforcement, but Commissioners did not grant him a hearing. Lynn made repeated requests for a meeting with the Mayor and Commissioners by letter and by email. On March 27, 2017 then Commissioner Dee Ann Haney emailed Plaintiffs that the final authority over the list was Texas City Fire Chief David Zacherl, and that City Commissioners would not intervene, nor offer any sort of hearing or administrative appeal. Haney encouraged Plaintiffs to apply again in 2018; that application was denied without cause and without recourse.

Wylie harasses Plaintiffs' and his employees

25.  Following Plaintiff's permit revocation, Windsor EMS ceased operations in Texas City and vacated its store front inside City limits. Then, on July 14, 2017, Windsor EMS received a direct call from Seabreeze Nursing and Rehabilitation, a senior care center in Texas City, requesting patient transport to a dialysis center in LaMarque, Texas. Two Windsor EMS operators, Michael Stefek and Zane Sweetin, responded to the private call. While transferring the patient from a stretcher into the ambulance, Plaintiffs' employees were confronted by Wiley, who positioned his Fire Department SUV to block the

ambulance from exiting the parking lot. As the two paramedics boarded the ambulance, Wiley approached the driver's side window and began shouting at Stefek, who was driving the ambulance. Stefek rolled his window down and Wiley demanded to know the name of the patient and their destination. Reluctant to violate his patient's privacy, Stefek initially refused; Wiley threatened to detain the paramedics, in the presence of their patient, and impound the ambulance unless Stefek identified the patient and their destination. Stefek told Wiley they were taking the patient to a dialysis appointment at a facility in La Marque; Wiley said he would cease his interference with patient services by moving his squad car and following the ambulance to La Marque. Once the paramedics completed the patient transfer, they were again accosted by Wiley in the dialysis center parking lot. Wiley told the paramedics they were being detained and were not allowed to leave the scene until the fire marshal arrived. When Sweetin protested, Wiley yelled at him to "Shut the fuck up," and wait in the ambulance. Stefek called Lynn from the scene, distraught over being detained and concerned about the potential blot on his otherwise immaculate professional record. After approximately 15-20 minutes, Texas City Fire Marshal Dennis Harris arrived at the dialysis center and issued each paramedic a citation for operating an ambulance without a permit and they were finally allowed to leave the scene.

26.  Three similar incidents occurred during which Wiley, or city officials acting at his behest, interfered with patient medical services in July 2017; August 3, 2017; and July 25, 2018. During the August 3, 2017 incident, Windsor paramedics picked up a nursing home resident for a surgical follow-up procedure at Mainland Hospital. The paramedics were again detained by a Texas City fire marshal and Wiley who also called the Texas City

police. While waiting for the officers to arrive, the fire marshal circled the ambulance on foot twirling his handcuffs and repeatedly shouting, "I'm an officer of the law." Paramedics feared they would be arrested, but stayed at the scene because their patient required a cardiac monitor that was not available at the hospital. Eventually, Texas City police officers arrived and instructed the paramedics to speak with the fire marshal. The fire marshal issued the paramedics citations for operating without a permit and failure to identify. The latest incident in July 2018 involved a patient transport from Webster to Tomball, during which a Windsor EMS ambulance passed through Texas City, an action not prohibited by the Ordinance. During that incident, Fire Marshal Shonna Bellow followed paramedics into the hospital screaming obscenities at them in front of the patient and hospital staff.

27. For each of the five citations issued during the first three incidents, Texas City issued arrest warrants for Lynn in January, 2018. Lynn was not present during any of these incidents. The warrants predate the probable cause affidavit on which they were secured. The affidavits dated January 22, 2018 include erroneous statements by Texas City Fire Marshal Dennis Harris. Harris claims to have been with Wiley to observe the patient pickup in Texas City in July 2017. However, Stefek maintains Wiley was alone in Texas City and that Harris arrived in a separate vehicle 15-20 minutes after the patient was dropped off in La Marque.

28. On January 9, 2018 Wiley and three other City Fire Department officials trespassed on private Windsor EMS property in Clear Lake, in an effort to shock and intimidate employees at a time when Wiley knew or should have known that Lynns would not be on the premises. As though they were some sort of S.W.A.T. team, two City vehicles flanked

each side of the office building and four officials, including Wiley and Fire Marshal Bellow descended on the receptionist. Wiley demanded to speak with Lynn, who had informed Wiley the day before that he would be out of town. City officials then trespassed beyond the public reception area into a clearly marked private employee area and began barging into individual offices, as though they were on a raid. Bellow left a business card with the receptionist, requesting a return call from Plaintiffs'. Lynn's attempts to follow up with Bellow by phone were ignored.

29. Because of Lynn's problems with Texas City officials, Windsor EMS lost 15 employees since 2017. Some employees who lived in Texas City and reported to the Texas City storefront were unable to make the commute to other Windsor EMS locations. Others, including Sweetin left Windsor EMS out of concern that the incidents with Wiley and the City fire marshals could mar his professional record and jeopardize future employment.

<u>Wylie interferes with Plaintiffs''s private contracts</u>

30. In addition to trespassing at his office, chasing ambulances, calling, and mailing cease and desist letters, Wiley also abused the state reporting process in an effort to damage Windsor EMS. As a result, for the first time in 14 years of serving the public, Plaintiffs' is at risk of losing his state ambulance license. Texas City filed at least two Texas Department of State Health Services (DSHS) complaints against Windsor EMS on December 14, 2017 and August 29, 2018 alleging various violations of the Texas Health and Safety Codes and Texas Administrative Codes. These complaints triggered a "random" spot check by state health department officials in August of 2018. Impressed with what he found, one of the

13

state inspectors, Blake Mills, told Plaintiffs' director of operations that he believed Wiley had "a personal vendetta" against the company that was the motivation behind the DHSH complaints. Windsor EMS passed the inspection.

31.  Nevertheless, Plaintiffs are now facing a current DSHS recommendation, based solely on the Texas City complaints, to revoke his state license and assess a $3,000 administrative penalty. To avoid this catastrophic action, Plaintiffs were forced to obtain counsel and must travel to Austin for a hearing to defend his company against a variety of erroneous claims. In addition to the complaints about operating without a license, Wiley also accused Windsor EMS paramedics of endangering patient safety, reckless driving, and speeding in an attempt to evade City officials. However, a GPS report that tracked the ambulance's speed on the date in question contradicts these claims. While the state license revocation would be fatal to Windsor EMS, the ongoing specter of the DSHS investigation has already cast a pall over his otherwise successful venture.

32.  In addition to the multitude of healthcare facilities that regularly called Windsor EMS directly for non-emergency services, Plaintiff held contracts with several facilities that, because of the City's permit revocation, are no longer able to fulfill the terms of their agreements. Those facilities include:

- The Lakes at Texas City;

- Oceanview Healthcare and Rehabilitation;

- Seabreeze;

- Ashton Parke Care Center;

- The Resort at Texas City and;

- The Rio at Mainland

33. Texas City sent letters, signed by Wiley, to the facility managers that contract with Windsor EMS, demanding that the private entities only do business with ambulance providers on the List. Wiley hand delivered the letters and demanded signatures acknowledging receipt. Altogether, lost business from Texas City resulted in damages in excess of $1 million per year since 2017.

34. Wiley's interference with private contracts did not stop at the Texas City limits. On July 26, 2018 Wiley and Fire Marshall Bellow made another unscheduled appearance at Plaintiff's office in Clear Lake when Plaintiffs' was not present. One hour later, Lynn received a call from Stacie Winkler, Vice President and Chief Counsel of Kindred Healthcare. She acknowledged an unnamed Texas City fire marshal contacted her about the incident. Citing concerns regarding that incident and a danger to patient safety, Winkler told Lynn that Kindred would cancel their contract with Windsor EMS, which included 11 different facilities outside of Texas City. Windsor EMS' estimates lost revenue from the Kindred contract at roughly $1 million annually.

Texas City permitting scheme endangers public health

35. In addition to the harms Plaintiffs suffered, the City's permitting scheme, and Wiley's selective enforcement thereof, caused a shortage of high quality ambulance services for Texas City patients. The state of Texas vests municipalities with the power to impose reasonable restraints on private ambulance companies in the interest ensuring the most efficient delivery of public services. Instead of assessing public need, the City set an arbitrary limit on the number of permits and allowed Wiley choose which companies would

be subject to the rules, without regard for the quality of those services. Neither the text of the ordinance nor any published deliberative record documents any problems arising out of an excess number of ambulances to justify the arbitrary cap. Since Plaintiffs' permit was denied, healthcare facilities the City now prohibits from calling Windsor EMS have reported service delays and increased patient wait times.

36.  Selective enforcement of the ordinance impacted both the quantity and quality of emergency medical services in Texas City. Windsor EMS vehicles were equipped with devices that some of the currently permitted ambulances simply do not provide including, balloon pumps, IV pumps, ventilators, and cardiac monitors. On March 30, 2017 Windosr EMS received a complaint from the owner of Ashton Parke Care Center, one of the facilities forced to sign an agreement with the City not to deal with Windsor EMS. The complaint read:

> *"While I don't wish to fight City hall because it could be a disaster for my company, I am well aware of the lack of resources that at least one of the permitted companies has.  Since we have residents that require wheelchair van for treatment three times a week for dialysis we must have a company that has these resources and it is my opinion from past relationship with AMED and Galveston EMS that neither one has the ability to provide this service."*

37.  The high revenues and positive reputation Windsor EMS enjoyed prior to the permit revocation was earned over years of establishing itself as an industry leader in Texas City. Barring Plaintiffs' from competing with less qualified providers will continue to have deleterious impacts on the price and quality of services available to Texas City patients.

## V.    CAUSES OF ACTION

**Count One: Deprivation of Due Process of Law Under 42 U.S.C. § 1983**

38.  Plaintiffs incorporates by reference the allegations contained in the paragraphs above as if  fully set forth herein.

39. Count One is asserted against Defendant Texas City and Defendant Wiley, individually.

40.  Under the Fourteenth Amendment, Plaintiffs are guaranteed the right to substantive and procedural due process with respect to his employment opportunities. The defendants violated Plaintiffs' due process rights while acting under color of state and local laws, ordinances and regulations. At all relevant times the defendants acted in the performance of their official duties in furtherance of the City's policies.

41. Furthermore, Plaintiffs' were entitled to at least a chance at a permit through a lottery when more than four ambulance companies applied for the available slots on the 2018 List, pursuant to Texas City Code of Ordinances § 35.13(B)(3). While Plaintiffs contest that all of the companies that applied were qualified under the Ordinance, in the alternative, he argues that the City should have conducted the lottery as stipulated in the City's own code. The City never conducted such a lottery.

42. There is no compelling, important, or even legitimate governmental interest motivating defendants' creation of a licensing scheme that allows some businesses to be excused from compliance with city ordinances while denying that right to others through proceedings lacking any due process protections. The resulting restrictions on Windsor EMS, including the absence of due process protections in connection with defendants'

denial of Plaintiffs' request to be treated the same as the other private ambulance companies, are not necessary, narrowly tailored, or even rationally related to any legitimate governmental interest.

43. As a result of defendants' arbitrary and capricious deprivation of Plaintiffs' constitutional right to due process of law, Plaintiffs suffered and is continuing to suffer substantial and irreparable injuries for which there are no adequate remedies at law. Plaintiffs is therefore entitled to permanent relief restraining and enjoining Texas City and Wiley from conduct that has the purpose or effect of depriving Plaintiffs of due process.

44. Plaintiffs also suffered actual injuries, injuries to his business reputation, and economic losses as a result of defendants' unlawful actions. He is therefore entitled to recover compensatory damages from all defendants, collectively and severally. Plaintiffs' is also entitled to an award of attorneys' fees and costs in accordance with 42 U.S.C. § 1988.

## Count Two: Deprivation of Equal Protection of Law Under 42 U.S.C. § 1983

45. Plaintiffs incorporate by reference the allegations contained in the paragraphs as if fully set forth herein.

46. Count Two is asserted against Defendant Texas City and Defendant Wiley, individually.

47. The Ordinance, the City's enforcement of the Ordinance, and the City's revocation of Plaintiff's permit constitute a policy or custom of the City of Texas City. This policy allows some private ambulance to companies to be excused from compliance with City

18

ordinances while denying that right to other, similarly situated and, in this case, more qualified businesses. Through this policy, the City deprived Plaintiffs of their constitutional right to equal protection under the law in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States.

48. There is no compelling, important, or even legitimate governmental interest motivating the City's creation of a scheme that allows some companies to avoid compliance with the Ordinances and denies that right to other, similarly-situated entities, especially where, as here, the City's conduct has resulted in a reduction in the quality and quantity of important medical services, as explained above. The resulting restrictions on Windsor EMS are not necessary, narrowly tailored, or rationally related to any legitimate governmental interest.

49. Furthermore, there is no no compelling, important, or even legitimate governmental interest motivating the City's selective enforcement of the generally-applicable Ordinance. The City's selective enforcement is a retaliatory act motivated by the animosity of a City official who attempted to use his position administering the List to seek remuneration from Windsor EMS. The City's selective enforcement is not necessary, narrowly tailored, or rationally related to any legitimate governmental interest as no rational reason could exist for denying permits to fully compliant companies while granting permits to non-compliant ones.

50. Plaintiffs suffered actual injuries, injuries to business reputation, and economic losses as a result of defendants' unlawful actions. He is therefore entitled to recover compensatory damages from all defendants, collectively and severally. Plaintiffs are also

entitled to an award of attorneys' fees and costs in accordance with 42 U.S.C. § 1988.

## Count Three: Unreasonable restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1

51.  Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

52. Count Two is asserted against Defendant Texas City and Defendant Wiley, individually.

53. The effect and intent of the Ordinance and, by extension, the List was and is to substantially limit competition among private ambulance companies by setting an arbitrary cap on the number of available permits. This effect was intensified by giving the City's EMS Administrator unbridled discretion to hand pick which companies may occupy the List and thereby establish a dominant share of the market.

54.  The unlawful agreements entered into by the Defendants include per se violations of the federal antitrust laws, including group boycotts and concerted refusals to deal. Those agreements along with other conduct by the defendants constitute unlawful contracts, combinations, and conspiracies in unreasonable restraint of trade or commerce in the United States market in violation of the Sherman Act, 15 U.S.C. § 1.

55.  No pro-competitive purpose or effect exists to justify the unlawful conduct engaged in by the defendants. However even if the City's policy had some pro-competitive effects, such pro-competitive effects can be achieved through less restrictive and less anti-competitive means under 15 U.S.C. § 1.

56.  By engaging in the unlawful activities described herein, the City has burdened, and will continue to burden, competition by, between, and among private businesses in interstate commerce within the United States without advancing any legitimate public purpose. The operation of private ambulance businesses in Texas City directly involves numerous aspects of interstate trade and commerce, including the billing and reimbursement of Medicaid and Medicare, Veterans Affairs, and numerous private payers. The defendant's actions directly and indirectly impacted the flow of, and have substantially and adversely affected, interstate trade and commerce. The interstate trade and commerce described herein has been carried out in part in this district and in other states in the United States, and commerce between this district and other states of the United States has been directly restrained by the anti-competitive conduct.

57.  By engaging in the unlawful activities described herein, and as a direct and proximate result of the City's actions, Windsor EMS business was irreparably damaged, and the harm is continuous in nature. Therefore, Windsor EMS is entitled to recovery of compensatory damages, treble damages, and reasonable attorney's fees pursuant to 15 U.S.C. § 15.

58.  Much of the harm Plaintiffs suffered and will continue to suffer is of an irreparable type for which monetary damages alone would not be curative. Plaintiffs are therefore also entitled to injunctive relief, in addition to the costs of suit and reasonable attorneys' fees. Finally, Plaintiff seeks a declaration from this Court that the Ordinance is anticompetitive in nature and an illegal restraint of trade under 15 U.S.C. § 1.

**Count Four: Tortious Interference Under State Law**

59.  Plaintiffs' incorporates by reference the allegations contained in paragraphs above as if

21

fully set forth herein.

60.  Count Four is asserted against Defendant Wiley, individually.

61.  Under Texas Penal Code § 36.02(a), "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another: (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter; [or] . . . (3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official . . . ."

62.  Here, Wiley solicited payment of funds by Windsor EMS presumably as consideration for the exercise of his discretion over the List. Windsor EMS had ongoing and/or prospective business relationships with its past and prospective customers. Wiley knew of Plaintiff's business relationships with past and prospective customers, and in retaliation for refusing to pay him, Wiley intentionally interfered with these relationships by demanding private businesses refuse to deal with Windsor EMS, effectively prohibiting them from fulfilling the terms of their contracts.

63.  Wiley's actions were independently unlawful, regardless of the effect those actions had on Plaintiff's past and prospective customers. Wiley's interference proximately caused Plaintiff's injuries which resulted in the actual damages exceeding $2 million, including lost profits.

64.  Plaintiffs seeks unliquidated damages within the jurisdictional limits of this court.

65.  Defendants are not entitled to immunity from any of the claims alleged in this lawsuit.

**Request for Permanent Injunction**

66. Plaintiffs re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs above of this Complaint.

67. Plaintiffs' request for a temporary restraining order is authorized by Federal Rule of Civil Procedure 65(b). This request for a temporary restraining order is made with notice to the City.

68. Plaintiffs will suffer irreparable injury if the City's selective enforcement of its ordinances is not restrained. Because there is no foreseeable end to the unequal treatment by the City, further injury to Plaintiffs is actual, imminent, and irreparable.

69. Plaintiffs have no adequate remedy at law for all of his injuries. Their injuries and losses are continuing. Their loss of business reputation, sales, potential sales, customers, and potential customers is not subject to easy measurement in terms of monetary damages. In particular, as a direct and proximate result of the City's selective enforcement of its own ordinances in violation of federal statutory and constitutional law, Plaintiffs have suffered and will continue to suffer irreparable harm to his business for which monetary damages alone would not be curative. Plaintiffs therefore are entitled to injunctive relief.

70. The injuries and losses to Windsor EMS cannot be completely quantified because of the unique and irreplaceable nature of the lost business opportunities and rights involved. Without the issuance of an injunction, there is a very real danger that Plaintiffs will be permanently deprived of important federal rights.

71. On its face, the Ordinance, its enforcement, and the City's refusal to allow Plaintiffs a hearing violates federal law in multiple respects. As such, Plaintiffs are likely to win on the merits.

72.  Balancing the respective harms to the parties requires issuance of an injunction because Plaintiffs will suffer permanent injury to his business. By contrast, this Court simply would be requiring the City to enforces its own laws equally and even-handedly.

73.  For the foregoing reasons, Plaintiffs requests that the City be restrained from:

a. Prohibiting private healthcare facilities from fulfilling the terms of their contracts with Windsor EMS; and

b.  Not enforcing City Ordinances against noncompliant companies that occupy to the List.

74.  Plaintiffs are willing to post bond.

## Damages

75.  Plaintiffs reallege and incorporates as though fully set forth herein the allegations contained in the paragraphs above of this Complaint.

76.  At this time, Plaintiffs believes their total actual damages caused by the City's actionable conduct as described above exceed $2 million, including lost profits.

77.  Plaintiffs are entitled to treble actual damages sustained as result of the City's federal antitrust violations. 15 U.S.C. § 15.

## ATTORNEY'S FEES

78.  Plaintiffs requests attorney's pursuant to 42 U.S.C. Section 1983.

## JURY TRIAL

79. Plaintiffs request trial by jury on all issues triable to a jury.

## VI.    PRAYER

80. Plaintiffs asks that the Defendants be cited to appear and answer and that, following trial, have judgment entered against it for the following:

24

a. actual and treble damages;

b. all available special and consequential damages;

c. declaratory relief;

d. pre-judgment and post-judgment interest;

e. permanent injunctive relief;

f. attorneys' fees and costs;

g. punitive damages; and

g. all other relief to which Plaintiffs are entitled.


Respectfully Submitted,
Kallinen Law PLLC

/s/ Randall L. Kallinen
Randall L. Kallinen
State Bar of Texas No. 00790995
Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:   713.320.3785
FAX:  713.893.6737
Email:        AttorneyKallinen@aol.com
Attorney for Plaintiff